TIMOTHY D. BARROW, ESQ.
1060 US Route 22 W
Lebanon, New Jersey 08833
(908) 236-2229
Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

-------------------------------------------------------------------------
ASPEN AMERICAN INSURANCE COMPANY,

                         Plaintiff,        :      Case No.

      v.

M/V ATLANTIC ACTION II, her engines, tackle,
appurtenances, etc., *in rem*, and
SALTINI SHIPTRADE CORP., ATLANTIC RO-RO INC.,:    **VERIFIED COMPLAINT**
                                                                                    **IN ADMIRALTY**

                         Defendants.   :
-------------------------------------------------------------------------

The Plaintiff herein, by its attorney, Timothy D. Barrow, complaining of the above Defendants, verifies upon information and belief as follows:

### THE PARTIES

1. At and during all times hereinafter mentioned, Plaintiff ASPEN AMERICAN INSURANCE COMPANY, is a corporation or other business entity duly organized and existing under and by the laws of Texas with its principal place of business located at 499 Washington Boulevard, Jersey City, New Jersey 07310.

2. At and during all times hereinafter mentioned, Defendant ATLANTIC RO-RO CARRIERS INC. (hereinafter referred to "ARRC") is a corporation or other business entity organized and existing under and by virtue of the laws of the State of New Jersey with its principal place of business located at One Evertrust Plaza, Jersey City, New Jersey 07302.

3. At and during all times hereinafter mentioned, Defendant SALTINI SHIPTRADE CORP. is a corporation or other business entity organized and existing under and by virtue of the laws of a foreign country with its main business address in care of Marlow Ship Management Deutschland

GmbH & Co. KG, Breite Strass 61, 22767, Hamburg, Germany. Said Defendant does business in New Jersey with and through the Jersey City, New Jersey offices of Co-Defendant ARRC.

4. Defendant M/V ATLANTIC ACTION II is or will be within this District during the pendency of this action.

5. Plaintiff ASPEN AMERICAN INSURANCE COMPANY (hereinafter "ASPEN") brings this action as the subrogated insurer of the subject cargo in suit and is entitled to maintain this action and also does so for and on behalf of the shipper and consignee of the subject cargo as well as all other parties who ultimately may have an interest in same as they may appear.

6. Defendant ARRC is a vessel operating common carrier and/ or contract carrier of cargo for hire and is otherwise a bailee of cargo entrusted in its care, custody and/or control.

7. Defendant SALTINI SHIPTRADE CORP. is the registered shipowner of the MV ATLANTIC ACTION II and is a carrier within the terms of the U.S. Carriage of Goods By Sea Act (COGSA).

8. Defendant M/V ATLANTIC ACTION II (hereinafter "Defendant Vessel") has ratified the carriage of the subject cargo accepted aboard the Defendant Vessel and is therefore subject to *in rem* proceedings and also liable *in rem or otherwise* to Plaintiff for the complained cargo loss which constitutes a maritime lien.

## JURISDICTION AND VENUE

9. Plaintiff's causes of action are admiralty and maritime claims within the original jurisdiction of this Honorable Court pursuant to 28 U.S.C. § 1333, and under Federal Rule of Civil Procedure 9(h) as well as this Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over any arising state law claims.

10. Venue is proper and appropriate for this action pursuant to Federal Rule of Civil Procedure 82 as

this Court's admiralty jurisdiction has been invoked by Plaintiff and Defendants herein are subject to personal service and/or the provisions of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions of the Federal Rules of Civil Procedure.

## THE FACTS

11. Plaintiff repeats and realleges the allegations set forth in paragraphs numbered 1 through 10 of the within Verified Complaint In Admiralty in their entirety, as if set forth herein at length.

12. For certain agreed consideration, Plaintiff's insured RPL International, Inc. contracted with Defendants for the ocean transportation of multiple containerized shipments of plywood (hereinafter "subject cargo') from Saint Petersburg, Russia to the USA ports of Baltimore and Houston on or about February 6, 2025.

13. On or before February 6, 2025, Defendant ARRC issued or caused to be issued Liner Sea Waybills and/or other receipts for the transport by ocean carriage of the subject cargo as set forth in the annexed Exhibits 1 a. through l. which identify the subject cargo as well as the ocean containers in which specific cargos were loaded. Plaintiff's insured RPL International, Inc. is listed as the shipper, consignee and notify party thereunder. These above shipments were signed on behalf of the Master of the vessel and owners of the MV ATLANTIC ACTION II.

14. The subject ocean shipping containers were loaded in apparent good order and condition at Saint Petersburg, Russia aboard the M/V ATLANTIC ACTION II voyage R2502 on or before February 6, 2025 for transport to and delivery at Baltimore and Houston in consideration of certain freight paid and received by said Defendants or persons acting on their behalf.

15. Defendant ARRC notified Plaintiff's insured RPL International, Inc. by e-mail dated February 26, 2025 that "… whilst sailing from St. Petersburg to the USA, an incident occurred aboard the m/v 'Atlantic Action II' where a number of containers collapsed under deck in holds 4 and 5."

16. Defendant Vessel ATLANTIC ACTION II arrived at the port of Baltimore on March 3, 2025 to discharge and deliver the subject shipping containers and cargos.

17. As a result of the reported collapse of containers under deck during the voyage, the cargo shipped under the 12 Liner Sea Waybills (*annexed hereto*) sustained total losses, damages and/or were otherwise noted to be in an unsound condition.

18. Written formal notice of claim was provided to Defendant ARRC by RPL International, Inc. on February 3, 2025 holding ARRC liable for any damage sustained to their cargo within the containers.

19. Defendants discharged part of the subject cargo at Seagirt Marine Terminal in the Port of Baltimore on or about March 6, 2025 and then shifted the Defendant Vessel to continue the discharge of the subject cargo while at Dundalk Marine Terminal in Baltimore commencing on or about March 10, 2025. The discharged subject cargo was delivered to White Marsh Transport in Sparrows Point, Maryland for further inspection and quantification of the loss and explore salvage of part of the subject cargo.

20. From March through August 2025, marine surveyors for Plaintiff ASPEN attended the vessel, transport, container stripping and temporary storage operations on various dates with its insured RPL International as well as with marine surveyors for Defendants in order to conduct joint surveys to ascertain the extent of the losses and mitigate damages for the subject cargos.

21. A total of 296 bundles of plywood were salvaged for the accepted high bid and salvage proceeds paid on September 3, 2025. Salvage was $50,268.00 on cargo valued at $139,990.50.

22. Other "shop" bundles of plywood totaling 201 bundles of plywood were offered to Plaintiff's insured customers at a 25% discount as the salvage high bidder could not match; thereby allowing the discounted bundles to be sold to RLI International customers subsequent to September 9, 2025. This discount led to a loss of $23,599.13.

23. Besides the salvaged and discounted bundles of plywood referred to in paragraph 21 herein, some of the subject cargo was ascertained to be lost (3 bundles) valued at $1,167.21. An additional 379 bundles (11 containers) were damaged beyond any viable mitigation effort and were abandoned as the stevedores refused to accept the bottom stowed containers due to the severity of the damage. A total loss by Plaintiff's marine surveyors was confirmed and the cargo was disposed of by Defendants at Baltimore. The 379 bundles were valued at $151,756.38.

24. The cause of loss, damages and the other unsound conditions documented by independent survey is attributed to a collapse in the under deck stow of the subject containers in Holds 3, 4 & 5 of the Defendant Vessel while enroute to Baltimore from St. Peterburg. This collapse

25. The subject recovered cargo originally bound for discharge and delivery from Houston had been off-loaded in Baltimore and subsequently transported overland to its Houston area destination.

26. The following additional charges and expenses were incurred by Plaintiff in relation to the subject cargo as part of their claim as follows:

a. Ocean and inland freight charges - $159,528.26;

b. Duty Charges - $99,489.01;

c. White Marsh Transport Warehouse Receiving Charges (Sparrows Point) - $15,693.89;

d. White Marsh Transport Warehouse Storage Charges (Sparrows Point) - $5,193.75;

e. White Marsh Transport Drayage Services for Stripped Containers (Sparrows Point) - $9,572.52; and

f. Relocation Charges for Houston Containers discharged in Baltimore - $13,000.00.

27. Plaintiff ASPEN and its insured RPL International, Inc. have duly performed all duties and obligations on their part to be performed.

**PLAINTIFF'S CAUSE(S) OF ACTION AGAINST DEFENDANTS ARRC and SALTINI SHIPTRADE CORP. UNDER THE CARRAIGE OF GOODS BY SEA ACT (COGSA)**

**COUNT ONE - BREACH OF CONTRACT**

28. Plaintiff repeats and realleges the allegations set forth in paragraphs numbered 1through 27 of the within Verified Complaint in Admiralty in their entirety, as if set forth herein at length.

29. Defendants' failures to transport and deliver the subject cargo of plywood upon Defendants' receipt from the shipper at St. Peterburg and to deliver to the consignee in the same good order and condition as received were caused by the Defendants herein and/or their sub-contractors', agents', and/or servants' breaches of contract owed to the shipper, consignee, receiver and/or owner of said cargo as carrier or bailee of same that resulted from their conduct or omissions to properly receive, store, secure, stow, carry, transport, discharge, deliver and/or care for the subject cargo. Defendants' failures are breaches of contract by the said Defendants.

30. By reason of the premises, Plaintiff has sustained estimated damages, no part of which has been paid although duly demanded, in the amount of $573,722.65 which includes its insured's deductible.

## COUNT TWO – NEGLIGENCE

31. Plaintiff repeats and realleges the allegations set forth in paragraphs numbered 1 through 27 of the within Verified Complaint in Admiralty in their entirety, as if set forth herein at length.

32. Defendants and their sub-contractors, agents, and/or servants owed duties of care to the shipper, consignee, receiver and/or cargo owner upon receipt of same and thereafter while the cargo was in their care, custody and/or control including loading, stowing, transport, discharge, unloading, storage and delivery.

33. The failure to properly stow, transport and deliver the subject cargo in the same good order and condition as received is a breach of Defendants' duties and obligations of care as carriers and were the proximate cause of the loss and damage sustained by Plaintiff and its insured.

34. By reason of the premises, Plaintiff has sustained estimated damages, no part of which has been paid although duly demanded, in the amount of $573,722.65 which includes its insured's deductible.

## COUNT THREE – BREACH OF BAILMENT

35. Plaintiff repeats and realleges the allegations set forth in paragraphs numbered 1 through 27 of the within Verified Complaint in Admiralty in their entirety, as if set forth herein at length.

36. Defendants and their sub-contractors, agents, and/or servants took possession and exercised care, custody and/or control of the subject cargo which constituted a bailment of same.

37. Defendants' failures to deliver the entrusted subject cargo of plywood and returning the same to the possession, care, custody and/or control of same to Plaintiff's insured, in good order and condition, but rather instead sustained losses, severe damage and extraordinary expenses due to the collapse of the under deck stow during the voyage which constitutes breaches of bailment and are in violation of their duties and obligations as bailees.

38. By reason of the premises, Plaintiff has sustained damages, no part of which has been paid although duly demanded, in the amount of $573,722.65 which includes its insured deductible.

## PLAINTIFF'S CAUSE(S) OF ACTION AGAINST DEFENDANT VESSEL UNDER THE CARRAIGE OF GOODS BY SEA ACT (COGSA) AND MARITIME LIENS FOR CARGO LOSS AND DAMAGE

### COUNT ONE - BREACH OF CONTRACT

39. Plaintiff repeats and realleges the allegations set forth in paragraphs numbered 1 through 27 of the within Verified Complaint in Admiralty in their entirety, as if set forth herein at length.

40. Defendant Vessel's failure to transport and deliver the subject containerized plywood cargo upon receipt and loading aboard at St. Petersburg, Russia in the same good order and condition as received were caused by the Defendant Vessel's breaches of contract owed to the shipper, consignee, receiver and/or owner of said cargo as carrier or bailee of same that resulted from its conduct or omissions to properly receive, load, stow, secure, carry, transport, discharge, deliver and/or care for the subject cargo. Defendant Vessel's failures are breaches of contract by the said Defendant.

41. By reason of the premises, Plaintiff has sustained estimated damages, no part of which has been paid although duly demanded, in the amount of $573,722.65 which includes its insured's deductible.

## COUNT TWO – NEGLIGENCE

42. Plaintiff repeats and realleges the allegations set forth in paragraphs numbered 1 through 27 of the within Verified Complaint in Admiralty in their entirety, as if set forth herein at length.

43. Defendant Vessel owed duties of care to the shipper, consignee, receiver and/or cargo owner upon receipt of same and thereafter while the cargo was in its care, custody and/or control including loading, stowing, transport, discharge, unloading and delivery.

44. The failure to transport and/or store and deliver the subject containerized plywood cargo in the same good order and condition as received is a breach of Defendant Vessel's duties and obligations of care as carrier and was the proximate cause of the loss and damage sustained by Plaintiff and its insured.

45. By reason of the premises, Plaintiff has sustained estimated damages, no part of which has been paid although duly demanded, in the amount of $573,722.65 which includes its insured's deductible. .

## COUNT THREE – BREACH OF BAILMENT

46. Plaintiff repeats and realleges the allegations set forth in paragraphs numbered 1 through 27 of the within Verified Complaint in Admiralty in their entirety, as if set forth herein at length.

47. Defendant Vessel and its sub-contractors, agents, and/or servants took possession and exercised care, custody and/or control of the subject cargo which constituted a bailment of same.

48. Defendant Vessel's failure to deliver the entrusted subject containerized cargo of plywood and returning the same to the possession, care, custody and/or control of same to Plaintiff's insured, in good order and condition, but rather instead the same sustained losses, severe damage and extraordinary

expenses due to the collapse of the under deck stow during the voyage which constitutes breaches of bailment and are in violation of Defendant Vessel's duties and obligations as bailee.

49. By reason of the premises, Plaintiff has sustained damages, no part of which has been paid although duly demanded, in the amount of $573,722.65 which includes its insured deductible.

WHEREFORE, Plaintiff demands:

1. That process in due form of law according to the practice of this Court may issue against the named Defendants;

2. That process and warrant for a maritime arrest, attachment and/or garnishment according to the rules and practices of this Court, in causes of admiralty and maritime jurisdiction *in rem*, may issue against the Defendant Vessel and that all persons having or claiming an interest therein may be cited to appear and answer, the matters aforesaid upon application for same by Plaintiff;

3. That process and warrant for maritime attachment and/or garnishment according to the rules and practices of this Court, in causes of admiralty and maritime jurisdiction *in rem*, may issue against the property of Defendant SALTINI SHIPTRADE CORP. and its representatives so that all persons having or claiming an interest therein may be cited to appear and answer, the matters aforesaid upon application for same by Plaintiff;

4. That a decree and judgment may be entered in favor of Plaintiff against the Defendants, individually, jointly and severally, for the amount of Plaintiff's damages in the amount of $573,722.65 or the total damages to be established at trial together with pre-judgment and post-judgment interest and costs; and

5. That this Court will grant the Plaintiff such other and further relief as may be just and proper.

                                                    ___s/ Timothy D. Barrow____

                                                    TIMOTHY D. BARROW
                                                    Attorney for Plaintiff

Dated: March 3, 2026
       Lebanon, New Jersey

VERIFICATION/CERTIFICATION

I, Mel Lay, Senior Claims Examiner hereby, verify, certify, and say:

I am employed for the Plaintiff herein; I have read the foregoing Verified Complaint and know the contents thereof; and that the same is true to my knowledge, except as to the matters therein stated to be alleged on information and belief, and as to those matters, I believe it to be true.

The sources of my information and the grounds for my belief as to those matters stated in the Verified Complaint, to be alleged on information and belief, are documents and records in my file, my claim investigation as well as communications with the insured RPL International, Inc. and marine surveyors Lone Star Maritime.

I hereby verify and certify that the foregoing statements made by me are true. I am aware that if any of these statements made by me are willfully false, I am subject to contempt of Court.

*Mel Lay*
_____
MEL LAY
Senior Claims Examiner
ASPEN AMERICAN INSURANCE COMPANY

DATED: March 3, 2026
Jersey City, New Jersey